UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JENNIFER HASSELSWERTH,

           Plaintiff,

    v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

           Defendant.

Case No. C18-424 RAJ

**ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION AND DISMISSING THE CASE WITH PREJUDICE**

Plaintiff seeks review of the denial of her application for Supplemental Security Income. Plaintiff contends the ALJ erred by finding her fibromyalgia non-severe and by discounting her testimony and three psychologists' opinions. Dkt. 9. As discussed below, the Court **REVERSES** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff is currently 49 years old, has a high school education, and has worked as a cook and waitress. Administrative Record (AR) 38, 52. Plaintiff applied for benefits in June 2014, alleging disability as of January 2010. AR 92. Plaintiff's application was denied initially and on reconsideration. AR 91, 105. After the ALJ conducted a hearing in April 2016, she ordered a consultative orthopedic examination. AR 46, 23. After the examination and a supplemental

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 1

hearing in October 2016, the ALJ issued a decision finding plaintiff not disabled. AR 75, 23-39.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Plaintiff has not worked since the June 2014 application date.

**Step two:** Plaintiff has the following severe impairments: cervical and lumbar degenerative disc disease, anxiety disorder, amphetamine dependence in remission, and personality disorder.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:** Plaintiff can perform medium work, lifting and/or carrying 50 pounds occasionally and 25 pounds frequently. She can sit two hours at a time and eight hours total per day. She can stand two hours at a time and four hours total. She can walk two hours at a time and four hours total. She can occasionally climb, stoop, kneel, crouch, and crawl. She can frequently balance. She must avoid unprotected heights. She can have occasional exposure to vibrations or moving mechanical parts and can operate a motor vehicle. She can understand, remember and carry out simple and routine tasks. She can have occasional, brief, superficial contact with coworkers and the general public. She needs a routine and predictable work environment.

**Step four:** Plaintiff cannot perform past relevant work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that plaintiff can perform, she is not disabled.

AR 26-39. The Appeals Council denied plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1.[3]

## DISCUSSION

This Court may set aside the Commissioner's denial of Social Security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record

---

[1] 20 C.F.R. § 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.
[3] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 2

as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). Each of an ALJ's findings must be supported by substantial evidence. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one interpretation, the Commissioner's interpretation must be upheld if rational. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).

**A.     Fibromyalgia**

Plaintiff contends the ALJ erred at step two by failing to include fibromyalgia as one of her severe medically determinable impairments. Dkt. 9 at 3. An ALJ's failure to include a severe impairment at step two is harmless where the ALJ considered the functional limitations caused by that impairment in later steps in the disability evaluation process. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Plaintiff argues the failure to include fibromyalgia as a severe impairment was harmful because the ALJ "discounted [plaintiff's] pain testimony due to a lack of objective findings, even though such findings are not found in fibromyalgia." Dkt. 11 at 2. The Commissioner contends there was no harmful error because plaintiff "did not identify any specific limitation from fibromyalgia not accounted for in the RFC." Dkt. 10 at 19.

The ALJ addressed all of plaintiff's alleged symptoms, including those based on

fibromyalgia. She noted medical observations of tenderness (or lack thereof), which is based on a patient's subjective perception of pain. *See* AR 27, 33. She analyzed plaintiff's allegations that fibromyalgia worsens her pain. *See* AR 33. With regard to step two, any error in concluding fibromyalgia was not a severe impairment is harmless because the ALJ considered the alleged functional limitations caused by fibromyalgia. *See Lewis*, 498 F.3d at 911.

**B.     Plaintiff's Testimony**

Where, as here, an ALJ determines a claimant has presented objective medical evidence establishing underlying impairments that could cause the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ can only discount the claimant's testimony as to symptom severity by providing "specific, clear, and convincing" reasons that are supported by substantial evidence. *Trevizo*, 871 F.3d at 678.

Plaintiff testified that she has neck pain and severe headaches every day. AR 53. Even signing her name causes "pain up [her] arm and into [her] neck." AR 55. She has a couple of panic attacks per week lasting an hour to all day. AR 55-56. Confusion and disorientation cause the worst panic attacks. AR 56-57. Her fibromyalgia "adds to the pain" and flares randomly. AR 55, 62. Lifting, standing, sitting, and walking cause pain. AR 64. She cannot sit longer than 30 minutes or walk farther than two blocks. AR 294. Her depression is debilitating. AR 66. She suffers from fatigue, dizziness, and memory problems. AR 68-69.

The ALJ addressed plaintiff's physical and mental impairments separately. She discounted plaintiff's physical symptom testimony because it conflicted with the medical evidence and plaintiff's activities. AR 31-33. She discounted plaintiff's mental symptom testimony as inconsistent with the medical evidence, her own statements, and her activities. AR 33-34.

### 1. Physical Impairments

Medical evidence and plaintiff's activities provided clear and convincing reasons to discount plaintiff's physical symptom testimony.

"Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *see also Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999). In a May 2016 examination, Gary Gaffield, D.O., observed that plaintiff "was able to complete documents, complete forms, fill out her medication list." AR 916. This objective medical evidence contradicts plaintiff's April 2016 testimony that even signing her name "creates pain up [her] arm and into [her] neck" and provides a sufficient reason to reject plaintiff's symptom testimony. AR 55.

An ALJ may discount a claimant's testimony based on activities that either contradict her testimony or that meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The ALJ cited treatment notes in 2014 showing that plaintiff's activities include bowling, working out on a treadmill, riding a bike, and "low impact weights." AR 34 (citing AR 537, 529). These activities contradict plaintiff's allegations of disabling impairments, and constitute clear and convincing reasons to discount her testimony.

Other reasons the ALJ provided were erroneous. For example, the ALJ cited a physical therapy treatment note reporting plaintiff's statement that an injection in her right shoulder made it "fee[l] a little better" and observing a "decrease in muscle tension" after treatment. AR 986. But after a four-month course of physical therapy, the discharge summary stated that plaintiff's "current impairment level is the same as initial" level. AR 995. While impairments that can be effectively treated are not disabling for Social Security purposes, here substantial evidence does

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 5

not support finding that physical therapy effectively treated plaintiff's impairment. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Also, an ALJ is not permitted to act as a medical expert by translating raw data into functional limitations. *See Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) ("[A]s a lay person, an ALJ is 'simply not qualified to interpret raw medical data in functional terms.'") (quoting *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir.1999) (per curiam)); *see also Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (An ALJ, "who was not qualified as a medical expert, should not have gone outside the record to medical textbooks for the purpose of making his own exploration and assessment as to claimant's physical condition."). For example, the ALJ concluded that Dr. Gaffield's finding that plaintiff rose from supine to sitting without turning on her side "indicate[s] that she does not have significant pain with the lower back." AR 32 (citing AR 916). The ALJ cites no authority for her conclusion. These reasons for discounting plaintiff's symptom testimony were erroneous.

However, because the ALJ provided at least two valid reasons to discount plaintiff's testimony, inclusion of invalid reasons was harmless error. *See Carmickle*, 533 F.3d at 1163. The Court concludes the ALJ did not err by discounting plaintiff's physical symptom testimony.

### 2. Mental Impairments

Medical evidence, together with plaintiff's own statements, provided clear and convincing reasons to discount plaintiff's mental symptom testimony.

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)). The ALJ cited a full mental status examination in which every finding was normal. AR 33-34 (citing AR 417-20).

The ALJ also cited numerous treatment notes, many from appointments for unrelated physical complaints, that include cursory psychological findings such as normal mood and affect. AR 34. While cursory notes are less persuasive than observations from a visit specifically focused on the impairment at issue, these findings do provide additional support for the ALJ's assessment of plaintiff's mental health symptom testimony. *See* 20 C.F.R. § 416.927(c)(5) (more weight generally given to opinion of a "specialist about medical issues related to his or her area of specialty" than to other opinions).

Inconsistencies in testimony are a factor an ALJ may consider in evaluating a claimant's testimony. *Orn*, 495 F.3d at 636. The ALJ cited May 2014 treatment notes reporting plaintiff said "most things in her life are going well." AR 34 (citing AR 509). This contradicted her testimony that her depression is disabling.

The ALJ also cited plaintiff's "concerted, successful effort to regain custody of her son" as a reason to discount her testimony. AR 34. However, without any further information about what efforts plaintiff took and how they contradict her testimony, this reason is unsupported by substantial evidence. The error is harmless, however, because the ALJ provided at least two valid reasons. *See Carmickle*, 533 F.3d at 1163.

The Court concludes the ALJ did not err by discounting plaintiff's mental symptom testimony.

**C.     Medical Opinions**

Plaintiff contends the ALJ erred by rejecting the opinions of three examining psychologists. Dkt. 9 at 6. An examining physician's opinion is entitled to greater weight than a nonexamining physician's opinion. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Even if an examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may

only reject it by stating "specific and legitimate" reasons. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). The ALJ can meet this standard by providing "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citation omitted). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725.

### 1. Dr. Uhl

After an examination in October 2013, W. Douglas Uhl, Psy.D., opined that plaintiff would have "marked" limitations in her abilities to learn new tasks, make simple work-related decisions, communicate and perform effectively in a work setting, complete a normal work day and work week without interruptions from psychologically based symptoms, maintain appropriate behavior in a work setting, and set realistic goals and plan independently. AR 407, 409. He opined that her impairments would last six months. AR 409.

The ALJ gave Dr. Uhl's opinions "little weight" because they relied heavily on plaintiff's self-report and because impairments must last or be expected to last at least 12 months (or result in death) to be considered disabling for Social Security purposes. AR 35-36 (citing 20 C.F.R. § 416.909).

An ALJ may reject a doctor's opinion if it is based "to a large extent on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (internal quotation marks omitted). Plaintiff argues that Dr. Uhl properly based his opinion on a clinical interview and mental status evaluation. Dkt. 9 at 9. Dr. Uhl did indeed conduct a clinical interview and a mental status evaluation, which the Ninth Circuit recognizes "are objective measures and cannot be discounted as a 'self-report.'" *Buck v.*

*Berryhill*, 869 F.3d 1040 (9th Cir. 2017); *see* AR 407-10. However, these objective measures contained very few abnormal findings. Plaintiff's orientation, perception, fund of knowledge, concentration, and abstract thought were all within normal limits. AR 410. The only abnormalities were "impulsive" thought process and content, slightly impaired memory, and "limited" insight and judgment. AR 410. The clinical interview revealed an extensive history of drug use, but few other abnormalities. AR 407. Given that the objective findings are largely normal, it is difficult to see how they could support "marked" limitations on about half of the work-related abilities about which Dr. Uhl was asked to opine. *See* AR 409. Dr. Uhl noted that he reviewed "[n]one" of plaintiff's records. AR 407. The ALJ reasonably concluded that such extreme work-related limitations must have been based on other factors, such as plaintiff's self-reports. The absence of support, except from plaintiff's properly-discounted self-reports, was a specific and legitimate reason to discount Dr. Uhl's opinions.

Plaintiff argues that the 12-month duration requirement was met because other doctors assessed similar limitations that together covered a period of over a year. Dkt. 9 at 9. Contrary to plaintiff's characterization, those doctors provided different patterns of limitations. *Compare* AR 409, 419, 443. For example, on the ability to set goals and plan, Dr. Uhl imposed "marked" limitations, Dr. Hakeman imposed only "moderate" limitations, and Dr. Parlatore imposed no limitation at all. *Id.* Moreover, the duration requirement applies to impairments, not limitations. 20 C.F.R. § 416.909. Dr. Uhl's six-month prognosis is based on the fact that when he examined plaintiff she was in "[e]arly recovery" from methamphetamine addiction and her recovery is "not stable yet." AR 408. The other doctors examined plaintiff at later stages in her recovery, and their opinions cannot simply be combined with Dr. Uhl's. *See* AR 417, 440, 852. Dr. Uhl noted that plaintiff "has to be abstinent much longer than 6 weeks" before receiving vocational

training. AR 409. Once her addiction recovery was stable and long-lasting, Dr. Uhl's opinions may have been quite different. In these circumstances, the six-month duration Dr. Uhl gave for his opinions was a specific and legitimate reason to discount them for purposes of the disability analysis.

The Court concludes the ALJ did not err by discounting Dr. Uhl's opinions.

### 2. Dr. Hakeman

Examining doctor Susan Hakeman, M.D., issued opinions in April 2014 and March 2016. AR 417, 852. She opined both times that plaintiff had "severe" limitations in her abilities to understand, remember and persist in tasks by following detailed instructions, perform within a schedule and maintain punctual attendance, and complete a normal work day and work week without interruptions from psychologically based symptoms. AR 419, 854. In 2016 she additionally opined that plaintiff would have severe limitations in the abilities to communicate, perform effectively, and maintain appropriate behavior in a work setting. AR 854.

The ALJ gave Dr. Hakeman's opinions "little weight" because they conflicted with plaintiff's "good performance on mental status exam"; her own recommendation that plaintiff be provided vocational rehabilitation services; and plaintiff's activities. AR 36. Incongruity between a physician's opinions and her own medical findings is a "specific and legitimate reason for rejecting" the opinions. *Tommasetti*, 533 F.3d at 1041. Both the 2014 and 2016 mental status examinations showed no abnormal findings at all.[4] *See* AR 420, 855. This was a specific and legitimate reason to discount Dr. Hakeman's opinions.

---

[4] Plaintiff asserts, without citation to evidence or authority, that the mental status examination is only used to screen for severe cognitive impairments. Dkt. 9 at 12. The "mini mental state examination" is such a screening tool, and plaintiff may have confused the two tests. *See* Mini-Mental State Examination (MMSE), *Stedman's Medical Dictionary* § 308350 (Nov. 2014).

The other reasons provided were erroneous. The minimal activities the ALJ cited, such as rising early, watching the news, attending substance abuse classes, and visiting her son, do not support the ALJ's conclusion that plaintiff was "very active." AR 36. Substantial evidence is similarly lacking for the ALJ's conclusion that if plaintiff were "as limited as Dr. Hakeman opines, then it is unlikely she would recommend that the claimant attend, '[v]ocational rehab.'" AR 36 (quoting AR 419) (alteration in original). The conclusion that having severe impairments necessarily means that treatment will not help is a medical determination that the ALJ is not qualified to make. *See Day*, 522 F.2d at 1156. However, because the ALJ provided at least one valid reason, any error in the other reasons offered is harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012) (error harmless if "inconsequential to the ultimate disability determination").

The Court concludes the ALJ did not err by discounting Dr. Hakeman's opinions.

### 3. Dr. Parlatore

Anselm A. Parlatore, M.D., examined plaintiff in August 2014 and opined that she "cannot perform activities within a schedule, maintain regular attendance and be punctual, communicate and perform effectively in a work setting, or complete a normal work day or work week without interruptions from her psychologically-based symptoms to a marked degree. She cannot maintain appropriate behavior in a work setting to a marked degree." AR 443. The ALJ gave Dr. Parlatore's opinions "[l]ittle weight" because they conflicted with his own and Dr. Hakeman's normal mental status examination findings. AR 36. These are specific and legitimate reasons, supported by substantial evidence. Dr. Parlatore's mental status examination findings were completely normal except for anxious mood and tense affect. AR 442. As discussed above, Dr. Hakeman's findings were normal as well.

The Court concludes the ALJ did not err by discounting Dr. Parlatore's opinions.

**CONCLUSION**

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 13th day of November, 2018.

*/s/ Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge